# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## INFORMAL BRIEF OF APPELLANT

**Case Number:** 2022-1229

**Short Case Caption:** Golden v. Apple Inc.

**Name of Appellant:** Larry Golden

---

**Instructions:** Read the Guide for Unrepresented Parties before completing this form. Answer the questions as best as you can. Attach additional pages as needed to answer the questions. This form and continuation pages may not exceed 30 pages.

Attach a copy of the trial court's opinion, order, and/or judgment. You may also attach other record material as an appendix. Any attached material should be referenced in answer to the below questions. Please redact (erase, cover, or otherwise make unreadable) social security numbers or comparable private personal identifiers that appear in any attachments you submit.

---

1. Have you ever had another case before this court?  ☑ Yes  ☐ No
   If yes, state the name and number of each case.

   > Case No. 2022-1196 Golden v. US
   > Case No. 2022-1267; Golden v. Google LLC

2. Did the trial court incorrectly decide or fail to take into account any facts?
   ☑ Yes  ☐ No
   If yes, what facts?

   > 35 U.S.C. 281. REMEDY FOR INFRINGEMENT OF PATENT. "A patentee shall have remedy by civil action for infringement of his patent."
   >
   > 35 U.S. Code § 271. (a)-[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent. (b)-Whoever actively induces infringement of a patent shall be liable as an infringer. (c)-Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent...

RECEIVED

MAR 0 1 2022

United States Court of Appeals
For The Federal Circuit

3. Did the trial court apply the wrong law? ☑ Yes ☐ No
   If yes, what law should be applied?

> According to the United States District Court District of South Carolina, "if the prose plaintiff fails to procedurally state a claim, it is the responsibility of the Judges of this court [to] outline proper procedure so that the pro se party will not be deprived of a fair opportunity to present his or her case", See Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975)"
>
> Even after Twombly and Iqbal, "in determining whether a complaint states a claim that is plausible, the court is required to proceed 'on the assumption that all the [factual] allegations in the complaint are true', [e]ven if their truth seems doubtful." (quoting Twombly, 550 U.S. at 556).
>
> At the pleading stage, "Plaintiff is not required to plead 'direct infringement of each and every element of the allegedly infringed claim.'" (quoting Crypto Res., LLC v. Assa Abloy, Inc., 236 F. Supp. 3d 671, 686 (E.D.N.Y. 2017))
>
> In Nalco Co. v. Chem-Mod, LLC, 883 F.3d 1337 (Fed. Cir. 2018), the Federal Circuit expressly stated: "the FRCP do not require a plaintiff to plead facts establishing that each element of an asserted claim is met." Id. at 1350 (quoting In re Bill of Lading, 681 F.3d 1323, 1339 (Fed. Cir. 2012).
>
> "In light of his pro se status, we cannot say that he has failed to allege a patent infringement claim as a matter of law on the face of the complaint …See McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1356-58 (Fed. Cir. 2007)."

4. Did the trial court fail to consider important grounds for relief?
   ☑ Yes ☐ No
   If yes, what grounds?

> 35 U.S.C. § 282 establishes a presumption of patent validity that an alleged patent infringer must overcome by clear and convincing evidence in all circumstances.
>
> On June 9, 2011, the U.S. Supreme Court issued its much-anticipated decision in Microsoft v. i4i. At issue was whether patents would continue to enjoy a strong presumption of validity during litigation. More specifically, whether the clear and convincing evidence standard necessary to invalidate a patent would be overturned.
>
> Microsoft had challenged that standard; arguing that a lower standard of "preponderance of the evidence" should be sufficient. The Supreme Court unanimously rejected Microsoft's argument and affirmed the Federal Circuit's long-standing strong presumption of proof. As a result, the clear and convincing evidence standard remains.
>
> The Trial Court fail to consider the presumption of validity of Plaintiff-Appellant's patents.

5. Are there other reasons why the trial court's decision was wrong?
   ☑ Yes ☐ No
   If yes, what reasons?

> All of Plaintiff-Appellant's inventions has "use" and are not frivolous. "A frivolous invention is an invention with no use. U.S. patents are only granted for a "new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof" (35 USC 101).
>
> Plaintiff-Appellant's fourteen (14) inventions assembled as a CMDC Device (i.e., smartphone, laptop, smartwatch, new and improved cell phone, etc.); with the "secondary" inventions designed and developed to be integrated with the CMDC, are:
>
> 1-Communicating, Monitoring, Detecting, and Controlling (CMDC) Device (i.e., smartphone) – Claim 23 of the '439 Patent. 2-Central Processing Units for CMDC Device – Claim 5 of the '287 Patent. 3-Camera CBR Sensor(s) for CMDC Device – Claim 4 of the '189 Patent. 4-Smartwatch CBR Detector for CMDC Device – Claim 19 of the '439 Patent. 5-Embedded CBRN Sensors for CMDC Device – Claim 16 of the '439 Patent. 6-Interchangeable Sensors for CMDC Device – Claim 20 of the '439 Patent. 7-NFC CBR Tag for CMDC Device – Claim 21 of the '439 Patent. 8-Remote/Electrical Lock for CMDC Device – Claim 125 of the '990 Patent. 9-Pre-Programmed Lock for CMDC Device – Claim 1 of the '287 Patent. 10-Fingerprint/Face Recognition for CMDC Device – Claim 1 of the '619 Patent. 11-Stall, Stop, Slowdown for CMDC Device – Claim 11 of the '891 Patent. 12-Vehicle Monitoring with CMDC Device – Claim 44 of the '891 Patent. 13-Connect Vehicle with CMDC Device – Claim 4 of the '287 Patent. 14-Internet-of-Things with CMDC Device – Claim 11 of the '619 Patent.

6. What action do you want this court to take in this case?

Please direct the Trial Court to grant service of process and Plaintiff-Appellant's plea for preliminary injunctive relief against, at least, Apple, Samsung, LG & Qualcomm. In a related case (COFC 13-307C; now, CAFC 2022-1196) of alleged patent infringement, Apple, Samsung, LG & Qualcomm was served notice by the COFC to appear if they wanted to protect their interest in the case. They fail to appear.

"While a contractor need not participate in the § 1498 litigation, contractors should be aware that failure to appear in response to a notice under Rule 14(b) acts as a waiver of any later argument that the contractor should not indemnify the government on grounds that the USCFC incorrectly decided the patent was valid and infringed." As the USCFC held in Bowser, Inc. v. United States:

"We think there is implicit in the whole plan and purpose of Subsection 14(b) a congressional intent that the issues of fact and law decided in a suit against the United States in the Court of Claims may not be retried in another court at the insistence of a third party, who had a "possible" interest in the case in this court but who failed to appear and protect his interest after timely notice or summons had been served upon him."

Date: 02/28/2022

Signature: *Larry Golden*

Name: Larry Golden

Pursuant to the Federal Circuit's "ORDER", in *Golden v. Apple Inc.*, Case No. 22-1229; Dkt. No. 9; filed 02/17/2022, Plaintiff-Appellant is submitting this corrected informal brief, not to exceed 30 pages.

This Motion is in compliance with FEDERAL RULE OF APPELLATE PROCEDURE 32: Briefs: (a)(4)(5)(6) & (7)(A) not to exceed 30 pages.

This dismissal is in favor of Defendants—Apple Inc., Samsung Electronics USA, LG Electronics USA, Inc., Qualcomm Incorporated, Motorola Solutions, Inc., Panasonic Corporation, AT&T Inc., Verizon Corporation Service Group, Sprint Corporation, T-Mobile USA, Inc., Ford Global Technologies, LLC, Fairway Ford Lincoln of Greenville, General Motors Company, Kevin Whitaker Chevrolet, FCA US LLC, Big O Dodge Chrysler Jeep Ram—on grounds independent of the underlying merits of the action (e.g., the Plaintiff-Appellant's infringement claims; the validity of Plaintiff-Appellant' asserted patents and patent claims; and, the Defendant's merits-based defenses).

> "In light of the vague conclusory allegations in the complaint in this action, and Golden's attempt to circumvent the prior dismissals of his patent infringement claims, the instant matter is subject to summary dismissal as frivolous." … "IT IS, THEREFORE, ORDERED that Plaintiff's Complaint is dismissed without prejudice and without the issuance of service of process." In the United States District Court for the District of South

RECEIVED

MAR 31 2022

United States Court of Appeals
for The Federal Circuit

4

Carolina—Greenville Division, in Larry Golden v. Apple Inc et al, Case 6:20-cv-04353-JD Date Filed 11/02/21 Entry Number 26.

## PLAINTIFF-APPELLANT HAS OUTLINED THE REASONS FOR ACCEPTANCE OF PLAINTIFF-APPELLANT'S CORRECTED INFORMAL BRIEF

Rule 8 of the South Carolina Rules of Civil Procedure, which is entitled "General Rules of Pleading, requires a Complaint to include "a short and plain statement of the facts showing that the pleader is entitled to relief." The official "Notes" to Rule 8, which appear directly under the text of the Rule itself, state that "This Rule 8(a) is in the same general language as the Federal Rule with the important distinction that the State practice requiring pleading of the facts (rather than a 'statement of the claim') is retained." (Emphasis added.)

Accordingly, the pleading standard in South Carolina requires more than the federal requirement of a "statement of a claim." It therefore stands to reason that, if a pleading does not meet the federal pleading standard, it would not meet the higher pleading standards imposed by South Carolina. *See Gaskins v. Southern farm Bureau Cas. Ins. Co.*, 3541 S.E.2d 269, 271 (S.C. Ct. App. 2000) ("Rule 12(b)(6), SCRP, 'retains the Code Pleading standard . . . rather than the more lenient notice pleading standard found in the federal rules."). See also *Scott Moise*, "Complaints," 14 South Carolina Lawyer 45 (Jan. 2003):

"South Carolina is one of only fifteen states that require factual pleading. *See Jan Armon*, A Method for Writing Factual Complaints, 1998 Detroit C.L. Rev. 109, 111-12 (1998). South Carolina's rule is based on "Code Pleading," which was adopted in this state in 1870. *See Justice v. The Pantry*, 335 S.C. 572, 576, 518 S.E.2d 40, 42 (1999). Although South Carolina adopted the Rules of Civil Procedure in 1985, the new rules retained the pleading requirements from the old Code, although not requiring its technical, restrictive, and outdated requirements."

In the S.C. District Court OPINION and ORDER: 6:20-cv-04353-JD; Date Filed 11/02/21; Entry Number 26: "Golden's amended complaint does not (among other things) describe specific systems developed and manufactured by Apple that are like Golden's '287 Patent and how the systems perform the same unique function as Golden's system". That's not true.

**Apple**

It's paradoxical that the initial complaint filed in this case, that was never docketed by the Magistrate Judge because it did not meet the imaginative, non-existence, 35-page limit requirement created by the Magistrate himself; is now being used by the Trial Court to dismiss Plaintiff-Appellant's case for failure to state enough factual allegations. The initial complaint filed in this case is the same as the amended complaint in Case No 1: 6:19-cv-2557-DCC-KFM; filed 10/15/19,

and describes the "specific systems developed and manufactured by Apple", in the following way:

"*157*. On information and belief, Apple is jointly, directly and/or indirectly infringing at least claim 5 of the '287 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, making, using, offering for sale, selling and/or importing computerized communications devices (i.e. iPhone 7 series, iPhone 8 series, iPhone X series, iPhone XS series, iPhone XR series, iPhone 11 series, and Apple Watch series 3, 4, & 5) included without limitation is Plaintiff's CMDC devices. As set forth in Golden's preliminary infringement contentions that Apple is making, using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly infringed the '287 patent and Apple is thereby liable for infringement of the '287 patent pursuant to 35 U.S.C. § 271. Apple have caused damage to Golden, which infringement and damage will continue unless and until Apple is enjoined. Exhibit L: Claim Chart for Apple Inc."

"*158*. On information and belief, Apple is jointly, directly and/or indirectly infringing at least claim 5 of the '287 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, making, using, offering for sale, selling and/or importing

computerized communications devices (i.e. iPhone 7 series, iPhone 8 series, iPhone X series, iPhone XS series, iPhone XR series, iPhone 11 series, and Apple Watch series 3,4, & 5) included without limitation [is] the Plaintiff's CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking; the CMDC's internet used with CMDC devices for mobile internet to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile application processing i.e. system-on-a-chip (SoC); the CMDC's chemical / biological monitoring used with CMDC devices for monitoring human heartrate; the CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device; and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that Apple is makings using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly infringed the '287 patent and Apple is thereby liable for infringement of the '287 patent pursuant to 35 U.S.C. § 271. Apple have

caused damage to Golden, which infringement and damage will continue

unless and until Apple is enjoined."

"*159*. The alleged infringement of Apple identified in this Count has

caused irreparable injury to Golden for which remedies at law are

inadequate. Considering the balance of the hardships between the parties, a

remedy in equity, such as a permanent injunction is warranted and such a

remedy would be in the public interest."

**Ford**

It's paradoxical that the initial complaint filed in this case, that was never

docketed by the Magistrate Judge because it did not meet the imaginative, non-

existence, 35-page limit requirement created by the Magistrate himself; is now

being used by the Trial Court to dismiss Plaintiff-Appellant's case for failure to

state enough factual allegations. The initial complaint filed in this case is the same

as the amended complaint in Case No 1: 6:19-cv-2557-DCC-KFM; filed 10/15/19,

and describes the specific systems developed and manufactured by Ford, in the

following way:

"*357*. On information and belief, Ford is jointly, directly and/or

indirectly infringing at least one of independent claims II, 23, & 44 and/or

dependent claims 47,48,49, 50, 51 & 53 of the '891 patent in this judicial

district and elsewhere in South Carolina and the United States by, among

other things, using, offering for sale, selling and/or importing pre-programmed stall, stop, or vehicle slowdown systems (PSSVSS) that includes, without limitation a PSSVSS for an autonomous or driverless vehicle; a PSSVSS for vehicle pre-crash forward acceleration; a PSSVSS for vehicle pre-crash reverse acceleration; a PSSVSS for vehicle lane departure; a PSSVSS for vehicle stabilization; a PSSVSS for vehicle unintended acceleration; a PSSVSS for vehicle moved outside a designated perimeter; a PSSVSS for traffic sign recognition; a PSSVSS for intelligent speed limiter, or, a PSSVSS for vehicle adapted cruise control. As set forth in Golden's preliminary infringement contentions that Ford is using, offering for sale, selling and/or importing of the hardware and software for the CMDC device have at a minimum directly and/or indirectly infringed the '891 patent and Ford is thereby liable for infringement of the '891 patent pursuant to 35 U.S.C. § 271. Ford have caused damage to Golden, which infringement and damage will continue unless and until Ford is enjoined. Exhibit R: Claim Chart for Ford Global Technologies, LLC"

"*358*. The alleged infringement of Ford identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a

remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest."

Plaintiff-Appellant's various patents illustrates and defines the patented invention(s). Plaintiff-Appellant's is allegedly claiming the Defendants has infringed seven (7) of his claimed inventions. Plaintiff-Appellant's patents describes six (6) claimed inventions that are grouped together to form the Pre-programmed Stall, Stop, Vehicle Slow-down System (PSSVSS).



I.   Pre-programmed Stall, Stop, Vehicle Slow-down System (PSSVSS)

a.  PSSVSS—Lane Departure.

b. PSSVSS—Vehicle Stabilization

c. PSSVSS—Unintended Acceleration

d. PSSVSS—Forward Pre-crash / Reverse Pre-crash

e. PSSVSS—Adapted Cruise Control

*Independent claim 44; and dependent claims 47-51, & 53, of the '891 patent:*

44. A vehicles' stall-to-stop system or vehicle slowdown system in signal communication with a pre-programmed automated system is adapted, modified, or designed to control the vehicles' stall-to-stop means or vehicle slowdown means, comprising:

an electrical system in electrical communication with at least one of a brake, a foot peddle, a radar, a camera, a navigational system, a light, a speed control, an ignition system, a steering wheel, a transmission, a fuel system, and a motor;

a computer system in signal transmission communication with at least one of the brake, the foot peddle, the radar, the camera, the navigational system, the light, the speed control, the ignition system, the steering wheel, the transmission, the fuel system, and the motor;

a receiver in electrical communication with the electrical system and adapted to receive at least one control signal from a pre-programmed automated system to activate a stall-to-stop means or vehicle slowdown means;

a receiver in computer communication with the computer system and adapted to receive at least one control signal in response to one of the vehicle's operating systems for monitoring the vehicle's condition upon exceeding a pre-programmed vehicle operating system parameter from the pre-programmed automated system to activate a stall-to-stop means or vehicle slowdown means such that the speed of the vehicle is initially decreased immediately after activation of the means upon initial receipt of the at least one control signal; and

wherein the at least one control signal is communicated from the receiver to the electrical system or the computer system to control at least one of the brake, the foot peddle, the radar, the navigational system, the light, the speed control, the ignition system, the steering wheel, the transmission, the fuel system, and the motor.

47.  The vehicles' stall-to-stop means or the vehicles' slowdown means of claim 44, further can be adapted, modified or designed to include a vehicle system designed to perform as a brake override system for stopping or slowing a vehicle experiencing unintended acceleration.

48.  The vehicles' stall-to-stop means or the vehicles' slowdown means of claim 44, further can be adapted, modified or designed to include a vehicle system designed to perform as a pre-crash system for stopping or slowing a vehicle to prevent a crash.

49.  The vehicles' stall-to-stop means or the vehicles' slowdown means of claim 44, further can be adapted, modified or designed to include a vehicle system designed to perform as a reverse acceleration slow-down system for stopping or slowing a vehicle traveling in reverse.

50.  The vehicles' stall-to-stop means or the vehicles' slowdown means of claim 44, further can be adapted, modified or designed to include a vehicle system designed to perform as a stabilization system for stopping or slowing a vehicle to prevent a vehicle turnover.

51.  The vehicles' stall-to-stop means or the vehicles' slowdown means of claim 44, further can be adapted, modified or designed to include a vehicle system designed to perform as a lane departure system for stopping or slowing a vehicle to prevent or minimize accidents when the vehicle begins to move out of its lane.

53.  The vehicles' stall-to-stop means or the vehicles' slowdown means of claim 44, further can be adapted, modified or designed to include a vehicle system designed to perform as an adjusted cruise control system for stopping or slowing a vehicle to prevent a crash.


**Patents are Issued with the "Presumption of Patent Validity**

The five primary requirements for patentability are: (1) patentable subject

matter, (2) utility, (3) novelty, (4) nonobviousness, and (5) enablement. 35 U.S.C.

§ 282 establishes a presumption of patent validity that an alleged patent infringer must overcome by clear and convincing evidence in all circumstances.

On June 9, 2011, the U.S. Supreme Court issued its much-anticipated decision in *Microsoft v. i4i*. At issue was whether patents would continue to enjoy a strong presumption of validity during litigation. More specifically, whether the clear and convincing evidence standard necessary to invalidate a patent would be overturned.

Microsoft had challenged that standard; arguing that a lower standard of "preponderance of the evidence" should be sufficient. The Supreme Court unanimously rejected Microsoft's argument and affirmed the Federal Circuit's long-standing strong presumption of proof. As a result, the clear and convincing evidence standard remains.

Congress never intended the Trial Court to invalidate patents and render them worthless, on any other standard than clear and convincing evidence.

A frivolous invention is an invention with no use. U.S. patents are only granted for a "new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof" (35 USC 101).

A frivolous lawsuit is a lawsuit that has no legal merit. To put it simply, a frivolous lawsuit has no basis in law or fact. Ridiculous, absurd, ludicrous, and nonsensical—these are all words that can be used to describe a frivolous lawsuit.

"The test for dismissal is a rigorous one and if there is any foundation or plausibility to the claim, federal jurisdiction exists."

The initial complaint filed in this case is the same as the amended complaint in Case No 1: 6:19-cv-2557-DCC-KFM; filed 10/15/19, and describes the "specific systems developed and manufactured by the Defendants".

"As noted by this Court previously, the Plaintiff's patent infringement claims in this action are subject to dismissal because the Plaintiff has failed to include factual allegations beyond the identities of the Defendants" …

"[A]lthough Golden cites a district court opinion in the Central District of California … to support his claim that his pleadings are sufficient because he attached his patents … his reliance and application of this authority misses the mark."

**Illustrative Claim Charts are not the same as Preliminary [Initial] or Final Infringement Contentions Claim Charts**

The Senior COFC Judge Eric G. Bruggink's "ORDER" in the related case, *Larry Golden v. The United States:* Case 1:13-cv-00307-EGB Document 215 Filed 02/26/21, made the following observation when the exhibits are read together with the complaint:

"In exhibit 7 to his present complaint, plaintiff's claim chart illustrates instances of alleged infringement of the '189 patent, '287 patent, '439

patent, '497 patent, and the '752 patent. E.g., id. at 100-108. He includes separate charts for a device manufactured by LG, one by Apple, and Samsung. The next chart in exhibit 7 explains why he believes that the Cell-All initiative resulted in the manufacture of these devices for DHS. More detail is appended regarding each of the accused devices in charts and diagrams that follow. In short, we cannot conclude on the face of these documents without more detailed briefing and examination that no valid patent claim has been presented. Read together with the sixth amended complaint, it is clear that Mr. Golden is alleging that the government caused the manufacture of all of these devices or caused these devices to use his technology. In light of his *pro se* status, we cannot say that he has failed to allege a patent infringement claim as a matter of law on the face of the complaint nor for any reason presented by defendant's motion. See *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356-58 (Fed. Cir. 2007)."

Following, is a list of exhibits that were included and filed with the initial complaint in this case, that was never docketed by the Magistrate Judge. The initial complaint and the exhibits far exceed the pleading standard for the South Carolina District Court (Trial Court).

Exhibit A: A true and correct copy of the '287 Patent is attached

Exhibit B: A true and correct copy of the '439 Patent is attached

Exhibit C: A true and correct copy of the '189 Patent is attached

Exhibit D: A true and correct copy of the '990 Patent is attached

Exhibit E: A true and correct copy of the '891 Patent is attached

Exhibit F: A true and correct copy of the '497 Patent is attached

Exhibit G: Plaintiff's Disclosure Document No. 565732 filed Nov. 26, 2004

Exhibit H: Plaintiff's documentary video CD: CMDC Conception CD.

Exhibit I: Plaintiff's CMDC device described in DHS *Cell-All* video; CD

Exhibit J: Plaintiff's response letters received from members of Congress

Exhibit K: Claim Chart for the '287 Patent

Exhibit L: Claim Chart for Apple Inc.

Exhibit M: Claim Chart for Samsung Electronics, USA.

Exhibit N: Claim Chart for LG Electronics, USA, Inc.

Exhibit O: Claim Chart for Qualcomm Inc.

Exhibit P: Claim Chart for Motorola Solutions Inc. (Motorola Inc.)

Exhibit Q: Claim Chart for Panasonic Corporation

Exhibit R: Claim Chart for Ford Global Technologies, LLC

Exhibit S: Claim Chart for General Motors Company

Exhibit T: Claim Chart for FCA US LLC

Exhibit U: Claim Chart for the '439 Patent

Exhibit V: Claim Chart for the '189 Patent

Exhibit W: Claim Chart for the '990 Patent

Exhibit X: Claim Chart for the '891 Patent

Exhibit Y: Claim Chart for the '497 Patent

**The Trial Court Dismissed Fourteen (14) of Plaintiff-Appellant's Inventions, and the Patent Claims that Supports the Inventions as "Frivolous"**

Plaintiff-Appellant's CMDC device is designed to be mass developed, mass manufactured, mass marketed, and mass commercialized across all industries, agencies, groups, demographics, races, ages, and genders to form a ubiquitous communicating, monitoring, detecting, and controlling environment.

The US Department of Homeland Security (DHS) published on 10/30/2007, its first solicitation (DHS S&T BAA07-10; *CELL-ALL Ubiquitous Biological & Chemical Sensing*) for the development and assembly of Plaintiff-Appellant's CMDC device. Apple, Samsung, Qualcomm, and LG were awarded contracts in 2007-2008 under the *CELL-ALL* initiative to assemble Plaintiff-Appellant's communicating, monitoring, detecting, and controlling (CMDC) device.

Plaintiff-Appellant's independent patent claims of the various patents-in-suit illustrates and defines the patented invention(s). Plaintiff-Appellant is allegedly claiming Apple, Samsung, Qualcomm, and LG is responsible for the assembly of fourteen (14) of his claimed inventions. The Patents describes thirteen (13) of Plaintiff-Appellant's claimed inventions that upon information and belief; Apple,

Samsung, LG, and Qualcomm are responsible for the assembly of the individual inventions, to form the CMDC device as a single invention.

Plaintiff-Appellant's fourteen (14) inventions are categorized as the "primary" invention of a Communicating, Monitoring, Detecting, and Controlling (CMDC) Device (i.e., smartphone, laptop, smartwatch, new and improved cell phone, etc.); with the "secondary" inventions designed and developed to be integrated with the CMDC (i.e., smartphone, laptop, smartwatch, and cell phone), devices. The inventions; each having at least one supporting patent claim, are:

I. Communicating, Monitoring, Detecting, and Controlling (CMDC) Device (i.e., smartphone) – Claim 23 of the '439 Patent

II. Central Processing Units for CMDC Device – Claim 5 of the '287 Patent

III. Camera CBR Sensor(s) for CMDC Device – Claim 4 of the '189 Patent

IV. Smartwatch CBR Detector for CMDC Device – Claim 19 of the '439 Patent

V. Embedded CBRN Sensors for CMDC Device – Claim 16 of the '439 Patent

VI. Interchangeable Sensors for CMDC Device – Claim 20 of the '439 Patent

VII. NFC CBR Tag for CMDC Device – Claim 21 of the '439 Patent

VIII. Remote/Electrical Lock for CMDC Device – Claim 125 of the '990 Patent

IX. Pre-Programmed Lock for CMDC Device – Claim 1 of the '287 Patent

X. Fingerprint/Face Recognition for CMDC Device – Claim 1 of the '619 Patent

XI. Stall, Stop, Slowdown for CMDC Device – Claim 11 of the '891 Patent

XII. Vehicle Monitoring with CMDC Device – Claim 44 of the '891 Patent

XIII. Connect Vehicle with CMDC Device – Claim 4 of the '287 Patent

XIV. Internet-of-Things with CMDC Device – Claim 11 of the '619 Patent

## I. Communicating, Monitoring, Detecting, and Controlling (CMDC) Device (i.e., smartphone) – Claim 23 of the '439 Patent



Monitoring equipment of at least one of the products grouped together by common features in the product groupings category of design similarity (i.e., computer terminal, personal computer (PC), laptop, desktop, notebook, handheld, cell phone, PDA or smart phone) interconnected to a product for communication therebetween …

**Communicating, Monitoring, Detecting, and Controlling (CMDC) Device (i.e., smartphone)**

**Claim 23 of the '439 Patent**: "A cell phone comprising: a central processing unit (CPU) for executing and carrying out the instructions; … whereupon the cell phone is interconnected to the cell phone detection device to receive signals or send signals to lock or unlock doors, to activate or deactivate security systems … multi-sensor detection systems, or to activate or deactivate the cell phone detection device;

"In addition, the basic monitoring terminal or PC 114, as shown in FIGS. 5 and 15, can be adapted and incorporated to include desktop PCs, notebook PCs, laptops, cell phones, LCD monitors, and satellite monitoring… computers, laptops, notebooks, PC's, and cell phones for the receipt and transmission of signals

Product grouping 4 (monitoring & communication devices) include, but are not limited to, mobile communication devices, …, wireless communication devices, monitoring sites, monitoring terminals, web servers, desktop personal computers (PCs), notebook personal computers (PCs), laptops, satellite phones, cell phones, … handhelds;

## II. Central Processing Units (CPUs) for CMDC Device – Claim 5 of the '287 Patent



Example: Qualcomm often refers to the Snapdragon as a "mobile platform" (e.g., Snapdragon 865 5G Mobile Platform). Snap-dragon semiconductors are embedded in devices of various systems; Android devices (i.e., Samsung & LG). Also used in cars and wearable devices i.e., Smart Watches

**Central Processing Units (CPUs) for Smartphone**

**Claim 5 of the '287 Patent**: A monitoring device, comprising: at least one central processing unit (CPU) … at least one of a transmitter or a transceiver in communication with the at least one CPU configured to … send signals to lock or unlock doors, send signals to control components of a vehicle, … or send signals to detect … chemical biological, radiological, or explosive agent such that the communication device is capable of communicating, monitoring, detecting, and controlling.

The "smartphone processor (CPU), also known as chipset, is a component that controls everything going on in your smartphone and ensures it functions correctly. You can compare it to the brain of the human body. Every action you perform on your smartphone goes straight to the processor." https://www.coolblue.nl/en/advice/smartphone-processors. html. "[T]oday's smartphones all have processors or CPUs. A smartphone CPU (central processing unit) is the brains of the entire device. Without one, no smartphone would be able to function" (smartphonedomain.com., 2021).

## III. Camera CBR Sensor(s) for CMDC Device – Claim 4 of the '189 Patent







### Camera CBR Sensor(s) for Smartphone

Camera Sensor for Radiological Detection: How can a cell phone detect radioactivity? Cell phones have cameras and camera sensors react to radioactivity. High energy particles strike a sensor array and register as small bright pinpoints or thin streaks of light. An app … works well enough to alert users to dangerous levels of radiation.

Camera Sensor for Biological Detection: "In the diagnostic test, a patient sample is mixed with CRISPR Cas13 proteins (purple) and molecular probes (green) which fluoresce, or light up, when cut. Coronavirus RNA present, CRISPR proteins snip the molecular probes, whole sample to emit light. Fluorescence detected with a cell phone camera." (Image: Science at Cal).

Camera Sensor for Chemical Detection: The sensor *Rhevision* and UC San Diego responds to different chemicals by changing color; a single chip with many tiny pores, each respond to a different chemical; a standard cell-phone camera can detect them; the phone's camera watches the chip for color changes.

**Claim 4 of the '189 Patent**: A built-in, embedded multi sensor detection system … sensor array or fixed detection device into the product that detects agents …

## IV. Smartwatch CBR Detector for CMDC Device – Claim 19 of the '439 Patent



Homeland Security's Smartwatch Will Detect Nuclear Bombs https://www.popular-mechanics.com/military/research/a18161/ homeland-security -smartwatch-detect-nuclear-bombs/

### Smartwatch CBR Detector for Smartphone

**Claim 19 of the '439 Patent**: A multi-sensor detection system for detecting at least one explosive, nuclear, contraband, chemical, biological, human, radiological agent, or compound, comprising: a plurality of sensors … capable of being disposed within, on, upon or adjacent a multi-sensor detection device.

The US Military's Latest Wearables [Smart Watch] Can Detect Illness Two Days Before You Get Sick https://www.defenseone.com/technology/2020/09/militarys-latest-wearables-can-detect-illness-two-days-you-get-sick/168664/

Studies reveal smartwatch biometrics can detect COVID-19: "smartwatches and other wearables measuring biometrics like heart-rate variability have the ability to detect if a person is COVID-19 positive" https://www.biometricupdate.com/202101/studies-reveal-smartwatch-biometrics-can-detect-covid-19-before-symptoms-surface

## V. Embedded CBRN Nanosensors for CMDC Device – Claim 16 of the '439 Patent



**Embedded CBRN Sensors for Smartphone (NASA)**

**Claim 16 of the '439 Patent**: A built-in, embedded multi sensor detection system … a cell phone, a smart phone

A silicon-based sensing chip, which consists of 64 nanosensors can turn a cell phone into a *portable poison detector*. (NASA). "can turn your cellphone into a *portable "silent killer" detector* https://www. foxnews.com/tech/smartphones-take-on-silent-killers-as-portable-danger-detectors & Nuclear Radiation Nanosensors and Nanosensory Systems https://link.springer.com/book/10.1007/978-94-017-7468-0

## VI. Interchangeable Sensor Device for CMDC Device – Claim 20 of the '439 Patent



**Plurality of Interchangeable Sensor Device for Smartphone: (NASA & Subtractor George Yu**

**Claim 20 of the '439 Patent**: A multi-sensor detection system for detecting at least one explosive, nuclear, contraband, chemical, biological, human, radiological agents…

The system he developed with NASA for the DHS Cell-All project, George Yu of Genel Systems Inc., created his NODE+ platform. A cylinder that transmits data from sensors to smartphone. The NODE+ is compatible with Android and Apple smart devices.

## VII. NFC CBR Tag for CMDC Device – Claim 21 of the '439 Patent



MIT-- wirelessly detect hazardous gases by using a simple sensor made from near-field communication (NFC) tags that can be read by a smartphone… detect gaseous ammonia, hydrogen peroxide, and cyclohexanone, and other gases… Sensors. Retrieved from: https://phys.org/news/ 2014-12-cheap-sensor-transmit-hazardous-chemicals.html

**Near-Field Communication (NFC) CBR Tag for Smartphone**

**Claim 21 of the '439 Patent**: A multi-sensor detection system … at least one tag that is read by the monitoring equipment that is capable of wireless near-field communication

In November 2007, two Defense Department contractors, and a U.S. city's bomb squad demonstrated how an RFID tag could send a signal to … detonated a small amount of explosives in a container a simple emission of a radio signal traveling on the approved RFID 433 MHz frequency. Officials from the Defense Department and DHS observed the demonstration. https://www.nationaldefense-magazine.org/articles/2011 /2/1/2011february-military-supply-chain-tracking-system-both-inefficient-and-dangerous

## VIII. Remote/Electrical Lock Disabler for CMDC Device – Claim 125 of the '990 Patent



**Remote/Electrical Lock Disabler for Smartphone (Gov. Contractor iControl's MATTs & mLOCK)**

**Claim 125 of the '990 Patent**: A multi-sensor detection system … whereupon detection causes a signal to be sent to the at least one communication device followed by communicating with the internal or external remote/electrical lock disabler.

Marine Asset Tag Tracking System (MATTS) is a DHS initiative for "Smart Container". MATTS "gateway": a wireless electronic device that communicates with a sensor array; the communication device; and locking mechanism for locking status and GPS location. Internal /external sensors are interconnected to operate with the MATTS device and can detect gas concentrations, radiation, humidity and moisture, atmospheric pressure, etc. The mLOCK communicates bi-directionally using encrypted messages between the lock and the MATTs readers or mobile devices (i.e., smartphone)

## IX. Pre-Programmed Lock Disabler for CMDC Device – Claim 1 of the '287 Patent





"Monitoring equipment being capable of sending signals to engage (lock), disengage (unlock), or disable (make unavailable) at least one of a remote lock, an electrical lock, a mechanical lock, or automatic lock…"

**Pre-Programmed Lock Disabler for Smartphone**

Security feature: After several unsuccessful log-in attempts using a passcode or fingerprint, an Android or iOS device automatically locks itself up. If unable to log in after the security layers, the only option is to have the device unlocked. The wrong pin will launch to Account Login. On an Android or Apple Phone, multiple attempts (usually five attempts or more) with an unknown or a wrong pin will go either into a delay before further attempts are allowed …

FBI Failed Attempts to Unlock Phone: The FBI recovered an Apple iPhone 5C—owned by the San Bernardino County, California government—that had been issued to its employee Syed Rizwan Farook, one of the shooters involved in the December 2015 San Bernardino attack. The attack killed 14 people and seriously injured 22. The two attackers died four hours after the attack in a shootout with police ... Authorities were able to recover Farook's work phone, but could not unlock its four-digit passcode, and the phone was programmed to automatically delete all its data after ten failed password attempts (an anti-theft measure on smartphones).

**Claim 1 of the '287 Patent**: Monitoring equipment that is at least one … a lock disabling mechanism that is able to engage (lock), or disengage (unlock), or disable (make unavailable) the monitoring equipment after a specific number of tries;

## X. Fingerprint and Face Recognition for CMDC Device – Claim 1 of the '619 Patent



### Fingerprint and Face Recognition for Smartphone

**Claim 1 of the '619 Patent**: A communication device that is at least a personal computer (PC), a cellphone, a smartphone, a laptop, or a handheld scanner, comprising at least a central processing unit (CPU), capable of: processing instructions to authenticate or identify a user by at least one of biometric fingerprint recognition, biometric facial recognition, biometric iris recognition, or biometric retina recognition

## XI. Stall, Stop, or Vehicle Slowdown for CMDC Device – Claim 11 of the '891 Patent



Driverless car smartphones, authorizes the phone to control functions. Smartphones and driverless technology: instant braking for autonomous cars; sensors detect interference, obstacles and oncoming cars; instant breaks to avoid collisions.

### Stall, Stop, or Vehicle Slowdown for Smartphone

**Claim 11 of the '891 Patent**: A vehicle adapted for receipt of a signal from a remote location to control the vehicle's stall-to-stop means or vehicle slowdown means, comprising: at least one of a brake, a foot peddle, a radar, a camera, a navigational system, a light, a speed control, an ignition system, a steering wheel, a transmission, a fuel system, and a motor;

Remote Vehicle Shutdown is a system of remotely shutting down the connected vehicle, using radio pulses; intended for police, military and security use. Remotely find and disable stolen vehicles; ability to prevent engine start; prevent move-ment of a vehicle; stop or slow an operating vehicle; gradually decelerate a vehicle by downshifting, limiting the throttle capa-bility; and, improve security of carriers of high-risk cargo, like hazardous materials. Security features that Remote Vehicle Shutdown provides. https://www.globenewswire.com/en/news-release/2019/12/17/1961557/0/en/Remote-Vehicle-Shutdown

## XII. Vehicle Monitoring with CMDC Device – Claim 44 of the '891 Patent



### Autonomous and Driverless Vehicle Monitoring with Smartphone

**Claim 44 of the '891 Patent**: A vehicles' stall-to-stop system or vehicle slowdown system in signal communication with a pre-programmed automated system is adapted, modified, or designed to control the vehicles' stall-to-stop means or vehicle slowdown means … (Dep. 55) … 44, further can be adapted, modified or designed to include a vehicle designed to perform as a driverless or autonomous vehicle … in operation with or without a user, driver or operator inside the vehicle.

## XIII. Connect Vehicle with CMDC Device – Claim 4 of the '287 Patent



### Connect Vehicle with Smartphone

**Claim 4 of the '287 Patent**: A monitoring device, comprising: at least one central processing unit (CPU) … at least one of a transmitter or a transceiver in communication with the at least one CPU configured to … send signals to lock or unlock doors, send signals to control components of a vehicle, … or send signals to detect … chemical biological, radiological, or explosive agent such that the communication device is capable of communicating, monitoring, detecting, and controlling.

**CarLink™** is a Smartphone interface that allows you to start your vehicle, unlock your doors or pop the trunk from virtually any distance, or help you find your car in a large garage after a sporting event or a trip to the mall. *Compatible with iPhone, BlackBerry and Android *Remote Start Compatible *Door lock and unlock *Car find feature (horn honk and/or flashing lights) *Control trunk release or sliding door open)

## XIV. Internet-of-Things (IoTs) with CMDC Device – Claim 11 of the '619 Patent



The smartphone can be used as an IoT device for Personal emergency response, fitness tracking, location-based asset tracking, natural vision processing, and a Bluetooth gateway for wearable Bluetooth devices that enable many IoT monitoring apps. Also, identity verification, GPS based guidance, position/orientation awareness apps for smartphone-based implementation.

### Internet-of-Things (IoTs) with Smartphone

**Claim 11 of the '619 Patent**: A central processing unit (CPU) of at least a personal computer (PC), a cellphone, a smartphone, a laptop, or a handheld scanner, capable of: processing instructions to connect the communication device to the internet or internet-of-things (IoTs) platform to sync, to at least one of a building's computer or security system, a vehicle's computer or security system, a lock, a detection device, or another communication device

The Internet-connected smartphones, can directly capture and compile data from as many as 14 different sensors:
    Accelerometer, GPS, Gyroscope, Magnetometer, Biometrics, Camera, Barometer, Proximity Sensors, Bluetooth connectivity, Barcode readers, Touchscreen sensors, Heart rate monitor, ECG, Haptic feedback sensors

The IoTs contain computing hardware, including processors with embedded programming telling them what to do, sensors that gather various sorts of readings (such as temperature, motion, chemical levels, heart rate and body movement) and communication hardware that can send and receive signals.

Although the "species or secondary" inventions are integrated to form the CMDC device, each of the "species or secondary" inventions are claimed in Plaintiff-Appellant's patents as independent inventions. In other words, the CMDC device is an invention of inventions.

The invention(s) are designed to be assembled to form the CMDC device. The CMDC device is designed to mitigate and/or prevent terrorist activity. The Government expressed the need to enhance the Nation's security after 9/11.

Therefore, the Trial Court was wrong in saying: "Golden also attached the '287 Patent to his complaint as an exhibit but offers no additional facts regarding the same. However, simply naming a product and providing a conclusory statement that it infringes a patent is insufficient to meet the "plausibility" standard set forth in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

## MALICIOUS INTENT

Malicious intent refers to the intent, without just cause or reason, to commit a wrongful act that will result in harm to another. It is the intent to harm or do some evil purpose. https://definitions.uslegal.com/m/malicious-intent/

The Magistrate Judge knew, that by forcing Plaintiff-Appellant to comply with his wrongful act, of limiting the complaint to 35 pages, it's practically impossible to "plead enough factual allegations that is plausible to suggest an entitlement to relief", of the following: a description of the 19 claimed inventions

above; 25 exhibits in support of the alleged factual allegations and the 19 claimed

inventions above; how the 19 claimed inventions are allegedly infringed: 3 claims

of the '287 Patent; 7 claims of the '439 Patent; 7 claims of the '189 Patent; 23

claims of the '990 Patent; 9 claims of the '891 Patent; and 3 claims of the '497

Patent: 9 alleged infringing devices of Apple Inc. ("Apple"); 9 alleged infringing

devices of Samsung Electronics, USA ("Samsung"); 9 alleged infringing devices

of LG Electronics, USA, Inc. ("LG"); 4 alleged infringing devices of Qualcomm

Inc. ("Qualcomm"); 5 alleged infringing devices of Motorola Solutions Inc.

("Motorola"); 4 alleged infringing devices of Panasonic Corporation ("Panasonic")

selling and offering for sale 40 alleged infringing devices by AT&T Inc.

("AT&T"); selling and offering for sale 40 alleged infringing devices by Verizon

Corporation Services Group ("Verizon"); selling and offering for sale 40 alleged

infringing devices by Sprint Corporation ("Sprint"); selling and offering for sale 40

alleged infringing devices by T-Mobile USA, Inc. ("T-Mobile"); 10 alleged

infringing devices of Ford Global Technologies, LLC ("Ford"); 10 alleged

infringing devices of Fairway Ford Lincoln of Greenville ("Fairway Ford"); 8

alleged infringing devices of General Motors Company ("GM"); 8 alleged

infringing devices of Kevin Whitaker Chevrolet ("Whitaker Chevrolet"); 8 alleged

infringing devices of FCA US LLC ("FCA"); and, 8 alleged infringing devices of

Big O Dodge Chrysler Jeep Ram ("Big O"); the complaint would be clued-up for dismissal for not providing enough factual allegations to support a claim for relief.

Denying Plaintiff's complaint and ordering Plaintiff to follow a guideline that is blatantly against the guidelines established for *Pro Se* pleadings, created additional cost, labor, and a waste of valuable time for the Plaintiff.

Is it possible, the Magistrate Judge hate African-American inventors so much that he is willing to defy the law, and all the rules and regulations, just to be sure the Plaintiff-Appellant, an African-American inventor, case(s) never comes before a jury? The South Carolina Judicial system has a long history of discriminating against African Americans, and the Government has a long history of taking the ideas [intellectual property] of African Americans.

The Trial Court acknowledges the wrongful act but continued to carry out the evil purpose of the Magistrate Judge. "[t]he Court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1)."

> "The Court is mindful of the Magistrate's previous order (DE 1) imposing a thirty-five (35) page limit for Plaintiff's complaint and notifying him that his case is not in proper form for service because inter alia Rule 8, Fed. R. Civ. P., requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)…

Plaintiff's current complaint totals 34 pages and he has raised an objection to the 35-page limit imposed by the Magistrate, this Court modifies the Magistrate's previous order and the Report and hereby lifts the 35-page limit restriction for an amended complaint."

## **STANDARD FOR REVIEW**

According to the United States District Court District of South Carolina, "if the prose plaintiff fails to procedurally state a claim, it is the responsibility of the Judges of this court [to] outline proper procedure so that the pro se party will not be deprived of a fair opportunity to present his or her case", *See Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975)"

South Carolina Judicial Branch: C. Civil Procedure in Magistrates' Courts 1. The Pleadings … "The plaintiff may combine as many claims … against a defendant in one case and may sue more than one defendant in one case …"

Even after *Twombly and Iqbal*, "in determining whether a complaint states a claim that is plausible, the court is required to proceed 'on the assumption that all the [factual] allegations in the complaint are true', [e]ven if their truth seems doubtful." (quoting *Twombly*, 550 U.S. at 556).

At the pleading stage, "Plaintiff is not required to plead 'direct infringement of each and every element of the allegedly infringed claim.'" (quoting *Crypto Res., LLC v. Assa Abloy, Inc.*, 236 F. Supp. 3d 671, 686 (E.D.N.Y. 2017))

In *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337 (Fed. Cir. 2018), the Federal Circuit expressly stated: "'the FRCP do not require a plaintiff to plead facts establishing that each element of an asserted claim is met.'" Id. at 1350 (quoting *In re Bill of Lading*, 681 F.3d 1323, 1339 (Fed. Cir. 2012).

"In light of his *pro se* status, we cannot say that he has failed to allege a patent infringement claim as a matter of law on the face of the complaint …See *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356-58 (Fed. Cir. 2007)."

## RELIEF

Please direct the Trial Court to grant service of process and Plaintiff-Appellant's plea for preliminary injunctive relief against, at least, Apple, Samsung, LG & Qualcomm.

Respectfully submitted,

Larry Golden, Plaintiff, Pro Se
740 Woodruff Rd., #1102
Greenville, South Carolina 29607
atpg-tech@charter.net
864-288-5605

AO 450 (SCD 04/2010)   Judgment in a Civil Action

# UNITED STATES DISTRICT COURT
for the
District of South Carolina

| | |
|---|---|
| Larry Golden, | |
| *Plaintiff* | |
| v. | Civil Action No.    6:20-cv-04353-JD |
| Apple Inc., Samsung Electronics USA, LG Electronics, USA, Inc, Qualcomm Inc, Motorola Solutions Inc, Panasonic Corporation, AT&T Inc, Verizon Corporation Service Group, Sprint Corporation, T-Mobile USA, Inc., Ford Global Technologies LLC, Fairway Ford Lincoln of Greenville, General Motors Company, Kevin Whitaker Chevrolet, FCA US LLC, Big O Dodge Chrysler Jeep Ram, | )<br>)<br>)<br>)<br>) |
| *Defendant* | |

## JUDGMENT IN A CIVIL ACTION

The court has ordered that *(check one):*

■ the Court adopts the Report and Recommendation.  Plaintiff's Complaint is dismissed without prejudice and without the issuance of service of process.

This action was *(check one)*:
❏ tried by a jury, the Honorable _____ presiding, and the jury has rendered a verdict.

❏ tried by the Honorable _____ presiding, without a jury and the above decision was reached.

■ decided by the Honorable Joseph Dawson, III

Date:   December 1, 2021

*ROBIN L. BLUME, CLERK OF COURT*

s/Rob Weber
*Signature of Clerk or Deputy Clerk*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Larry Golden, | ) | Case No.: 6:20-cv-04353-JD-KFM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **OPINION & ORDER** |
| Apple Inc.; Samsung Electronics USA; LG | ) | |
| Electronics USA, Inc.; Qualcomm Inc., | ) | |
| Motorola Solutions, Inc.; Panasonic | ) | |
| Corporation; AT&T Inc.; Verizon | ) | |
| Corporation Service Group; Sprint | ) | |
| Corporation; T-Mobile USA, Inc.; Ford | ) | |
| Global Technologies, LLC; Fairway Ford | ) | |
| Lincoln of Greenville; General Motors | ) | |
| Company; Kevin Whitaker Chevrolet; FCA | ) | |
| US LLC; Big 'O' Dodge Chrysler Jeep | ) | |
| Ram, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the Court with the Report and Recommendation of United States

Magistrate Kevin F. McDonald ("Report and Recommendation" or "Report"), made in accordance

with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) of the District of South Carolina.[1]

Plaintiff Larry Golden ("Golden" or "Plaintiff"), proceeding *pro se*, filed this Complaint alleging

patent infringement claims against the captioned Defendants. (DE 10.)

Specifically, Golden asserts that the Defendants have infringed on the following patents:

10,163,287 ('287 patent); 9,589,439 ('439 patent); 9,096,189 ('189 patent); RE43,990 ('990

---

[1]    The recommendation has no presumptive weight, and the responsibility for making a final
determination remains with the United States District Court. See Mathews v. Weber, 423 U.S. 261, 270-
71 (1976). The Court is charged with making a de novo determination of those portions of the Report and
Recommendation to which specific objection is made. The Court may accept, reject, or modify, in whole
or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28
U.S.C. § 636(b)(1).

patent); RE43,891 ('891 patent); and 7,385,497 ('497 patent) (DE 10; 10-1; 10-2; 10-3; 10-4; 10-5; 10-6.) These patents are entitled "multi sensor detection and lock disabling system" and "multi sensor detection, stall to stop and lock disabling system." (DE 10; 10-1; 10-2; 10-3; 10-4; 10-5; 10-6.) The patents appear to involve technology that can be used to detect explosives/radiation and then disable vehicles or other equipment wherein the explosives/radiation are detected. The Plaintiff's complaint alleges infringement of each patent by each Defendant in formulaic recitations of the elements of patent infringement. (DE 10.) For relief, the Plaintiff seeks a declaratory judgment that the Defendants have infringed on his patents, a permanent injunction enjoining the infringing activity by the Defendants, as well as money damages. (DE 10, pp. 6, 33.)

This Court possesses the inherent authority to review the *pro se* complaint to ensure that subject matter jurisdiction exists and that a case is not frivolous, even if the pleading is not subject to the pre-screening provisions of 28 U.S.C. § 1915. See Mallard v. U.S. Dist. Ct., 490 U.S. 296, 307–08 (1989) ("Section 1915(d) . . . authorizes courts to dismiss a 'frivolous or malicious' action, but there is little doubt they would have power to do so even in the absence of this statutory provision."); Ross v. Baron, 493 F. App'x 405, 406 (4th Cir. 2012) (unpublished) (finding that "frivolous complaints are subject to dismissal pursuant to the inherent authority of the court, even when the filing fee has been paid . . . [and] because a court lacks subject matter jurisdiction over an obviously frivolous complaint, dismissal prior to service of process is permitted." (citations omitted)).

Accordingly, on February 5, 2021, the Magistrate Judge issued the Report given his initial review of the pleadings. The Report recommended summary dismissal of the complaint with prejudice and without issuance of service of process or leave to amend his complaint. The Report further recommended that this Court consider the entry of sanctions in the amount of $400.00

against Golden because he has continued to file frivolous litigation in this Court.[2]  (DE 20.)  In

support of the Magistrate's recommendation, the Report took judicial notice that the instant matter

represents Golden's fifth unsuccessful action regarding his patents (and infringing actions).  See

Golden v. Apple, Inc., et al., C/A No. 6:20-cv-02270-JD (D.S.C.) ("Case Number 4"); Golden v.

Apple Inc., et al., C/A No. 6:19-cv-02557-DCC, 2020 WL 415896 (D.S.C. Jan. 27, 2020), aff'd

C/A No. 20-1508, --- F. App'x ---, 2020 WL 5240656 (Fed. Cir. Sept. 3, 2020) ("Case Number

3"); Golden v. United States, C/A No. 1:19-cv-00104-EGB (Fed. Cl.), dismissal aff'd 955 F.3d

981 (Fed. Cir. 2020) ("Case Number 2"); Golden v. United States, C/A No 1:13-cv-00307- SGB,

stayed pending patent review, at doc. 186 (Fed. Cl.) ("Case Number 1"); and In re Patent Number

RE 43,990, https://portal.uspto.gov/pair/PublicPair# (choose patent number, enter RE43990, and

then click Image File Wrapper) (last visited September 26, 2021), petition denied June 25, 2020.

The instant complaint seeks damages against many of the same defendants as named in Case

Number 3 and Case Number 4; however, it appears that this action represents Golden's attempt to

re-litigate the claims from Case Number 3 because Case Number 3 was dismissed as frivolous

without prejudice.

Accordingly, the Report recommended dismissal of Plaintiff's complaint because *inter alia*

Plaintiff's patent infringement claims are premised on unsuccessful patent infringements claims

that have been adjudicated, and even if they were valid, his complaint still fails because "the

plaintiff has failed to include factual allegations beyond the identities of the defendants, reference

to the alleged infringing devices, and the alleged infringed-upon patents."  (DE 20, p. 8.)

---

[2]      Although this action represents Golden's third frivolous action based upon alleged patent
infringement (and fifth case overall) and the Report recommends that this Court sanction Golden $400.00,
this Court declines to order sanctions at this time.  However, in the event Golden attempts to file another
frivolous action in this Court, the Court will consider the imposition of sanctions as warranted.

Golden filed an objection to the Report on February 11, 2021 (DE 23); however, to be actionable, objections to the Report and Recommendation must be specific. Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge. See United States v. Schronce, 727 F.2d 91, 94 & n.4 (4th Cir. 1984). "The Supreme Court has expressly upheld the validity of such a waiver rule, explaining that 'the filing of objections to a magistrate's report enables the district judge to focus attention on those issues -- factual and legal -- *that are at the heart of the parties' dispute*.'" Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (2005) (citing Thomas v. Arn, 474 U.S. 140 (1985) (emphasis added)). In the absence of specific objections to the Report and Recommendation of the magistrate judge, this Court is not required to give any explanation for adopting the recommendation. See Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983).

Plaintiff makes the following "objections"[3] to the Report, which the Court will discuss *seriatim*. First, Golden objects to the Report's dismissal of the action as frivolous because he contends he is merely refiling a lawsuit with the deficiencies corrected. Upon review, however, Golden has not cured the frivolousness of his allegations. In reviewing a complaint for frivolousness or malice, the Court looks to see whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. See Neitzke v. Williams, 490 U.S. 319 (1989). As noted by this Court previously, the Plaintiff's patent infringement claims in this action are subject to dismissal because the Plaintiff has failed to include factual allegations beyond the identities of the Defendants,

---

[3]     Although Golden filed a 35-page Objection, most of the document discusses social editorials and citations to laws that do not focus this Court on the factual and legal issues at the heart of the parties' dispute and are, therefore, overruled.

4

reference to the alleged infringing devices, and the alleged infringed-upon patents. (DE 10; see also Golden v. Apple, Inc., et al., 819 F. App'x at 931 (affirming in Case Number 3 the dismissal of patent infringement claims because the complaint contained only "vague generalities and block quotes of statutes, cases, and treatises, but nowhere points us to any nonfrivolous allegations of infringement of any claim by any actual product made, used, or sold by any defendant"). For instance, Golden's amended complaint alleges in Count I that

> On information and belief, Apple is jointly, directly, indirectly and/or under the 'doctrine of equivalents', infringing at least claim 5 of the '287 patent. The alleged infringing products are: iPhone 7 series, iPhone 8 series, iPhone X series, iPhone XS series, iPhone XR series, iPhone 11 series, iPhone 12 series and Apple Watch series 3, 4, & 5.

(DE 10, ¶ 28.) Golden also attached the '287 Patent to his complaint as an exhibit but offers no additional facts regarding the same. However, simply naming a product and providing a conclusory statement that it infringes a patent is insufficient to meet the "plausibility" standard set forth in Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Although Golden cites a district court opinion in the Central District of California (albeit not binding precedence) to support his claim that his pleadings are sufficient because he attached his patents just as the plaintiff in that case, his reliance and application of this authority misses the mark. See InCom Corp. v. Walt Disney Co., No. CV15-3011 PSG (MRWx), 2016 U.S. Dist. LEXIS 71319, at *8 (C.D. Cal. Feb. 4, 2016) (where the district court found that plaintiff's amended complaint did more than name a product and baldly conclude that it infringes plaintiff's patent, but that plaintiff attached the patents and described *inter alia* how "its Attendance Tracking System uses RFID technology and ID badges to track human presence in large volumes."). Even applying InCom as purported by Golden, Golden's amended complaint does not (among other things) describe specific systems developed and manufactured by Apple that are like Golden's '287 Patent and how the systems perform the same unique function as Golden's system or assert facts

5

regarding the availability of his technology prior to his invention.[4]  In light of the vague conclusory allegations in the complaint in this action, and Golden's attempt to circumvent the prior dismissals of his patent infringement claims, the instant matter is subject to summary dismissal as frivolous. Although this Court agrees with the Report that Plaintiff's amended complaint should be dismissed because it is frivolous, the Court declines to dismiss the amended complaint with prejudice. Moreover, given the Court's modification of the Report, the Court declines to impose sanctions. Furthermore, the Court finds Golden's remaining objections to be non-specific and/or moot and, therefore, overrules them.

Accordingly, after a thorough review of the Report and Recommendation and the record in this case, the Court adopts the Report and Recommendation as modified and incorporates it herein.

**IT IS, THEREFORE, ORDERED** that Plaintiff's Complaint is dismissed without prejudice and without the issuance of service of process.

---

[4]    The Court is mindful of the Magistrate's previous order (DE 1) imposing a thirty-five (35) page limit for Plaintiff's complaint and notifying him that his case is not in proper form for service because *inter alia* Rule 8, Fed. R. Civ. P., requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  Plaintiff previously filed his complaint and exhibits numbering more than 300 pages.  While Plaintiff's current complaint totals 34 pages and he has raised an objection to the 35-page limit imposed by the Magistrate, this Court modifies the Magistrate's previous order and the Report and hereby lifts the 35-page limit restriction for an amended complaint.

Although the Court has lifted this restriction, the Court notes that Golden's complaint in Case Number 3 numbered more than 150 pages (not counting exhibits) and his amended complaint numbered more than 250 pages (not counting exhibits) and the matter was still dismissed as frivolous. See Golden, Apple, Inc., et al., C/A No. 6:19-cv-02557-DCC.  Likewise, Case Number 4, whose complaint numbers more than 80 pages, has equally been dismissed as frivolous. See Golden v. Apple, Inc., et al., C/A No. 6:20-cv-02270-JD.  The lifting of the restriction should not be taken as an *imprimatur* for a successful no page limit complaint.  As a reminder, the filing of excessive and unnecessary documents impedes judicial efficiency and the administration of justice. See Spencer v. Hedges, 838 F.2d 1210, 1988 WL 9621, at *1 (4th Cir. 1988) (unpublished table decision) (affirming dismissal of a complaint where a plaintiff failed to provide a short and plain statement of a claim under Rule 8).  As Golden has experienced in his previous cases, ". . . length and complexity may doom a complaint by obfuscating the claim's essence." United States v. Lockheed-Martin Corp., 328 F.3d 374, 378 (7th Cir. 2003)

**AND IT IS SO ORDERED.**

Joseph Dawson, III
United States District Judge

Greenville, South Carolina
November 2, 2021

### NOTICE OF RIGHT TO APPEAL

Plaintiff is hereby notified that he has the right to appeal this order within thirty (30) days

from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.

PRIORITY
MAIL
EXPRES

FLAT RATE
ENVELOPE

ONE RATE ■ ANY WEIGH

To schedule free Package Pi
scan the QR code.

USPS.COM/PICKUP

PS10001000006

EP13F May 2020
OD: 12 1/2 × 9 1/2

PEEL FROM THIS CORNER





UNITED STATES
POSTAL SERVICE ®

PRIORITY
MAIL
EXPRESS ®

**CUSTOMER USE ONLY**

PHONE ( 864 ) 288-5605.

FROM: (PLEASE PRINT)

Larry Golden
740 Woodruff Road
#1102
Greenville, SC 29607



**DELIVERY OPTIONS (Customer Use Only)**
■ SIGNATURE REQUIRED Note: The mailer must check the "Signature Required" box if the mailer: 1)
Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4)
Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's
mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.

Delivery Options
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available)*
*Refer to USPS.com® or local Post Office™ for availability.

TO: (PLEASE PRINT)        PHONE (      )

United States Court of Appeals for
the Federal Circuit
Case No: 2022-1229
717 Madison Place, NW
Washington, DC
2 0 4 3 9 -

**ORIGIN (POSTAL SERVICE USE ONLY)**

| ☑ PO ZIP Code | ☐ 1-Day | ☐ 2-Day | ☐ Military | ☐ DPO |
|---|---|---|---|---|

PO ZIP Code: 29606

Date Accepted (MM/DD/YY): 2-28-22

Time Accepted: 11:58   ☐ AM  ☐ PM

Scheduled Delivery Date (MM/DD/YY): 3-1-22

Scheduled Delivery Time: ☑ 12:00 PM   ☐ 3:00 PM

Postage: $ 24.95

| Weight | ☐ Flat Rate |
|---|---|
| ___ lbs ___ ozs. | ☑ Flat Rate |

**DELIVERY (POSTAL SERVICE USE ONLY)**

Special Handling/Fragile: $

Insurance Fee

COD Fee

Return Receipt Fee

Live Animal Transportation Fee

Sunday/Holiday Premium Fee: $

Acceptance Employee Initials: HW

Total Postage & Fees: $ 26.95

Delivery Attempt (MM/DD/YY)   Time   ☐ AM  ☐ PM   Employee Signature

Delivery Attempt (MM/DD/YY)   Time   ☐ AM  ☐ PM   Employee Signature

LABEL 11-B, MAY 2021        PSN 7690-02-000-9996

PAYMENT BY ACCOUNT (If applicable)
USPS® Corporate Acct. No.        Federal Agency Acct. No. or Postal Service™ Acct. No.

EI 036 964 505 US



U.S. POSTAGE PAID
PME 1-DAY
29606
GREENVILLE, SC
FEB 28, 22
AMOUNT

$26.95

R2303S1023000-09

UNITED STATES
POSTAL SERVICE ®

1007      20439

TO SEAL

FOR DOMESTIC AND INTERNATIONAL USE

UNITED STATES
POSTAL SERVICE

U.S. POSTAGE PAID
PME 1-DAY
GREENVILLE, SC
29606
FEB 28, 22
AMOUNT
**$26.95**
R2303S102300-09

20439

1007

UNITED STATES POSTAL SERVICE ®

# PRIORITY MAIL EXPRESS®

## FLAT RATE ENVELOPE

ONE RATE ■ ANY WEIGH

To schedule free Package Pic
scan the QR code.



USPS.COM/PICKUP

■ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
■ $100.00 insurance included.

▲ PEEL FROM THIS CORNER

**UNITED STATES POSTAL SERVICE** ® | **PRIORITY MAIL EXPRESS**®

FOR DOMESTIC AND INTERNATIONAL USE

CUSTOMER USE ONLY

FROM: (PLEASE PRINT)   PHONE ( 864 ) 288-5605

Larry Golden
740 Woodruff Road
#1102
Greenville, SC 29607

DELIVERY OPTIONS (Customer Use Only)

☒ SIGNATURE REQUIRED Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.

Delivery Options
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
   *Refer to USPS.com® or local Post Office™ for availability.

TO: (PLEASE PRINT)   PHONE ( )

United States Court of Appeals For
The Federal Circuit
Case No: 2022-1229
717 Madison Place, NW
Washington, DC

2 0 4 3 9 -

ZIP + 4® (U.S. ADDRESSES ONLY)

PAYMENT BY ACCOUNT (if applicable)
USPS® Corporate Acct. No.     Federal Agency Acct. No. or Postal Service™ Acct. No.

EI 036 964 505 US

| ORIGIN (POSTAL SERVICE USE ONLY) | | ☐ Military ☐ DPO | |
|---|---|---|---|
| PO ZIP Code | Scheduled Delivery Date (MM/DD/YY) | Postage | |
| 29606 | 3-1-22 | $ 26.95 | |
| Date Accepted (MM/DD/YY) | Scheduled Delivery Time | Insurance Fee | COD Fee |
| 2-28-22 | ☐ 12:00 PM ☐ 3:00 PM | $ | $ |
| Time Accepted | ☐ AM ☒ PM | Return Receipt Fee | Live Animal Transportation Fee |
| 11:58 | | $ | $ |
| Special Handling/Fragile | Sunday/Holiday Premium Fee | Total Postage & Fees | |
| $ | $ | $ 26.95 | |
| Weight | ☒ Flat Rate | Acceptance Employee Initials | |
| lbs. ozs. | | | |

| DELIVERY (POSTAL SERVICE USE ONLY) | | | |
|---|---|---|---|
| Delivery Attempt (MM/DD/YY) | Time | Employee Signature | |
| | ☐ AM ☐ PM | | |
| Delivery Attempt (MM/DD/YY) | Time | Employee Signature | |
| | ☐ AM ☐ PM | | |

LABEL 11-B, MAY 2021     PSN 7690-02-000-9996